1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9    CARL KINCAID,                              Case No. 3:12-cv-00482-MMD-WGC

10                             Plaintiff,

11       v.                                                  ORDER

12   WASHOE COUNTY, et al.,                     (Defs.' Motion to Dismiss – dkt. no. 3)

13                             Defendants.

14

15   I.     SUMMARY

16          Before the Court is Defendants Washoe County, Mike Haley, and Lisa Haney's

17   Motion to Dismiss. (Dkt. no. 3.) For the reasons set forth below, the Motion is denied.

18   II.    BACKGROUND

19          Plaintiff Carl Kinkaid was an employee of the Washoe County Sheriff's Office for

20   approximately twelve years. (Dkt. no. 1 ¶ 3.) He has been fired on two occasions. On the

21   first, Plaintiff was allegedly terminated for wearing an unauthorized sweatshirt and for

22   having four previous, unrelated write-ups on his record. (*Id.* ¶ 5.) After this termination,

23   Plaintiff appealed the decision in an arbitration proceeding. The arbiter determined that

24   Plaintiff's termination was unjustified and ordered his reinstatement with full back-pay

25   and benefits. (*Id.* ¶ 6.) Additionally, the arbiter found that the Sheriff's Office could not

26   use unrelated write-ups to support termination and that other officers who had worn non-

27   uniform apparel had not been disciplined. (*Id.*) Plaintiff alleges that his termination was

28   based on his extreme weight gain and obesity. (*Id.* ¶ 8.)

1   Plaintiff worked in detention facilities for approximately eighteen months following

2   his reinstatement. (*Id.* ¶ 10.) On June 4, 2012, Plaintiff was terminated for the second

3   time. The alleged reason for his termination was that Plaintiff had failed to complete his

4   cell checks, he had been dishonest about this error, and he had been disciplined in the

5   past. (*Id.* ¶ 12.) Plaintiff admits that he failed to complete his cell checks but stated he

6   was not dishonest about this failure. (*Id.*) He also stated that other officers who had not

7   completed cell checks were not fired. (*Id.* ¶ 14.) Prior to his termination, Plaintiff claims

8   he received an above-standard performance appraisal. (*Id.* ¶ 13.) He alleges that his

9   second termination was in retaliation for the fact that he sought arbitration following his

10   first termination. (*Id.* ¶¶ 16, 21.)

11   Plaintiff brings two claims: (1) liability under 42 U.S.C. § 1983 for violation of the

12   First Amendment and the Fourteenth Amendment of the United States Constitution; and

13   (2) violation of Chapters 289 and 284 of the Nevada Revised Statutes. Defendants seek

14   dismissal for failure to state a claim upon which relief can be granted.

15   **III.   LEGAL STANDARD**

16   A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

17   relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide

18   "a short and plain statement of the claim showing that the pleader is entitled to relief."

19   Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While

20   Rule 8 does not require detailed factual allegations, it demands more than "labels and

21   conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.*

22   *Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

23   "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550

24   U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient

25   factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

26   678 (internal citation omitted).

27   In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

28   apply when considering motions to dismiss. First, a district court must accept as true all

2

1   well-pled factual allegations in the complaint; however, legal conclusions are not entitled

2   to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action,

3   supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district

4   court must consider whether the factual allegations in the complaint allege a plausible

5   claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint

6   alleges facts that allow a court to draw a reasonable inference that the defendant is

7   liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the

8   court to infer more than the mere possibility of misconduct, the complaint has "alleged –

9   but not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks

10  omitted). When the claims in a complaint have not crossed the line from conceivable to

11  plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

12       A complaint must contain either direct or inferential allegations concerning "all the

13  material elements necessary to sustain recovery under *some* viable legal theory."

14  *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

15  1106 (7th Cir. 1989) (emphasis in original)).

16  **IV.    DISCUSSION**

17       **A.    First Amendment Claim Under 42 U.S.C. § 1982**

18       It is well settled that the state may not abuse its position as employer to stifle "the

19  First Amendment rights [its employees] would otherwise enjoy as citizens to comment on

20  matters of public interest." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The

21  Supreme Court has explained that "[t]he problem in any case is to arrive at a balance

22  between the interests of the [public employee], as a citizen, in commenting upon matters

23  of public concern and the interest of the State, as an employer, in promoting the

24  efficiency of the public services it performs through its employees." *Id.* The current Ninth

25  Circuit test for evaluating a First Amendment retaliation claim of a government official

26  considers five factors: "(1) whether the plaintiff spoke on a matter of public concern;

27  (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the

28  plaintiff's protected speech was a substantial or motivating factor in the adverse

1  employment action; (4) whether the state had an adequate justification for treating the
2  employee differently from other members of the general public; and (5) whether the state
3  would have taken the adverse employment action even absent the protected speech."
4  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

5     Defendants move to dismiss Plaintiff's First Amendment claim on two grounds:
6  (1) that Plaintiff's speech was not a matter of public concern; and (2) that Plaintiff was
7  speaking as a public employee, not as a private citizen.

8  **1.   Public Concern**

9     Defendants argue that Plaintiff's pursuit of arbitration following his first termination
10  is not a matter of public concern because it exclusively addressed his misconduct as a
11  deputy official. (Dkt. no. 3 at 7.)

12     Plaintiff alleges in his Complaint that his arbitration was a matter of public concern
13  because he "pointed out in that grievance discrimination and unfair treatment by [sic]
14  public officials in a public agency." (Dkt. no. 1 ¶ 22.) The purported reason for his first
15  termination was that he was wearing non-uniform garb and had four non-related write-
16  ups. Plaintiff claims, however, that Defendants were motivated by discriminatory animus
17  based on his disability of obesity. He asserts that this animus is evidenced by the fact
18  that disciplinary paperwork referred to him as a "sloth." (*Id.* ¶ 8.) Additionally, he asserts
19  that a managerial employee of the Sheriff's Department testified at the arbitration that
20  Plaintiff was treated differently than other employees. (*Id.* ¶ 7.) Plaintiff does not,
21  however, make clear whether he alleged that Defendants' actions were discriminatory in
22  the arbitration itself.

23     If Plaintiff's speech did address concerns about discriminatory practices or
24  wrongdoing within the Sheriff's office, his speech could be of import to the public. *See*
25  *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004) ("We have
26  previously held that proceedings before a judicial or administrative body constitute a
27  matter of public concern if they bring to light potential or actual discrimination, corruption,
28  or other wrongful conduct by government agencies or officials.") (*citing Lytle v.*

4

*Wondrash*, 182 F.3d 1083, 1087-88 (9th Cir. 1999); *Rendish v. City of Tacoma*, 123 F.3d 1216, 1223–24 (9th Cir. 1997)). Indeed, proper management of government offices generally can be of public concern. *See, e.g.*, *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 425–26 (9th Cir. 1995). "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Johnson*, 48 F.3d at 422 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). These factors cannot be assessed at this stage of the litigation on a motion to dismiss.

Further factual development is therefore necessary to determine whether Plaintiff's speech was of public concern.

### 2.     Private Citizen

Defendants also argue that Plaintiff was speaking as a public employee, not a private citizen, because the remedy of arbitration was provided in his collective bargaining agreement. (Dkt. no. 3 at 7.) Defendants cite no law in support of this proposition.

"[S]tatements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Posey v. Lake Pend Orielle School Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (internal quotations and alterations omitted). Based on the allegations in the Complaint and accepting them as true, the Court cannot find that seeking arbitration was Plaintiff's duty or an act he was paid to perform.

### B.     Government Liability

Defendants also move to dismiss Washoe County as a defendant, arguing that Plaintiff has not established that there was a policy or custom pursuant to which officials acted.

Washoe County, as a municipality, "may be held liable under a claim brought under § 1983 only when the municipality inflicts an injury, and it may not be liable under

1   a respondeat superior theory." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185

2   (9th Cir. 2002) (*quoting Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658,

3   694 (1978)). As a result, a § 1983 plaintiff must allege either that the municipality itself

4   violated someone's rights or that it directed its employee to do so, or that it was

5   deliberately indifferent to a plaintiff's constitutional right. *Id.*

6       The first requirement of *Monell* is that "plaintiff must identify a 'policy' or 'custom'

7   that caused the plaintiff injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)

8   (*citing Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986); *City*

9   *of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  In justifying the imposition of liability for

10  a municipal custom, the Supreme Court has noted that "an act performed pursuant to a

11  'custom' that has not been formally approved by an appropriate decisionmaker may fairly

12  subject a municipality to liability on the theory that the relevant practice is so wide-spread

13  as to have the force of law." *Id.* at 404 (*citing Monell*, 436 U.S. at 690–91).  Additionally,

14  a custom or practice can be "inferred from widespread practices or 'evidence of repeated

15  constitutional violations for which the errant municipal officers were not discharged or

16  reprimanded.'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir.

17  2001) (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)).  "A policy is a

18  deliberate choice to follow a course of action . . . made from among various alternatives

19  by the official or officials responsible for establishing final policy with respect to the

20  subject matter in question." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.

21  2006).

22       Alternatively, a single act of a policymaker in some instances can be sufficient for

23  a *Monell* claim when "the decisionmaker possesses final authority to establish municipal

24  policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481–82.

25       Plaintiff alleges that Defendants' conduct "was done within the scope of their

26  employment and pursuant to a custom or policy of Washoe County." (Dkt. no. 1 ¶ 4.)

27  Plaintiff states that there was a custom of retaliation that resulted in adverse employment

28  actions against subordinate employees exercising their rights. (*Id.*) He further claims that

1    Defendants Haney and Haley are final policy makers and "their unconstitutional conduct
2    is thus a policy of Washoe County." (*Id.*) Accepting these allegations as true, Plaintiff has
3    adequately pled liability under *Monell* for the purpose of defeating a motion to dismiss.

4    **V.    CONCLUSION**

5        The Court notes that the parties made several arguments and cited to several
6    cases not discussed above. The Court has reviewed these arguments and cases and
7    determines that they do not warrant discussion as they do not affect the outcome of the
8    Motion.

9        It is therefore ordered that Defendants' Motion to Dismiss (dkt. no. 3) is denied.

10   DATED THIS 13th day of September 2013.

11

12

13   MIRANDA M. DU
     UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28